IDEALITE CO. et al. v. PROTECTION LIGHT CO.

(Circuit Court, S. D. Ohio, W. D. August 20, 1900.)

No. 5,390.

PATENTS—VALIDITY OF REISSUE—HYDROCARBON BURNERS.

Claims 1 and 2 of the Brough reissue No. 11,657 (original No. 559,670), for a hydrocarbon burner, which were not included in the original patent, are void, because it does not appear that the original patent was inoperative or invalid by reason of their omission, and because including these claims the reissue is not for the same invention covered by the original patent.

In Equity. Suit for infringement of reissue patent No. 11,657, to Thomas J. Brough (original No. 559,670), for a hydrocarbon burner. On demurrer to bill.

Geo. B. Parkinson and A. E. Georgi, for complainants.

Hosea, Knight & Jones, for defendant.

THOMPSON, District Judge. The bill sets up a reissue patent, alleges that it has been infringed by the defendant, and prays for an injunction, the assessment of damages, and an account of profits. The defendant demurs to the bill, and the assignments of the demurrer are: (1) Want of equity; (2) want of novelty; (3) original patent not inoperative nor invalid; (4) the reissue patent not for the same invention. It is urged in support of the demurrer that it is not shown in the bill, nor does it appear from an examination of the original and reissue letters patent, of which profert is made by the bill, that the original patent was inoperative or invalid, nor that the reissue patent is for the same invention, but that, on the contrary, it does appear therefrom that the original patent was operative and valid, and that the reissue patent covers claims not within the contemplation of the original patent. The new or additional claims of the reissue patent read as follows:

"(1) In a hydrocarbon burner, the combination with the burner outlet orifice, a valve, a cylindrical sizing and cleaning stem carried by the valve, and adapted to extend through said orifice and to size and clean the same, said stem having a diameter equal to that of the orifice. (2) In a hydrocarbon burner, the combination with a valve casing having a burner outlet orifice, a valve seat, a valve plug and stem in said casing, of a cylindrical sizing and cleaning stem, integral with and extending beyond the valve, of a diameter equal to that of the orifice referred to, and adopted to pass through, size, and clean said orifice for the purpose specified."

The clauses of the specifications explanatory of these claims, and which are not found in the specifications of the original patent, read as follows:

"This case (see Figs. 4 and 5) is screw-threaded interiorly at its lower end to receive a screw-threaded plug, $C^1$, which is turned by a handle, $C^2$, to advance or withdraw the stem in the case. The case, C, is enlarged, or the stem, $C^1$, slightly reduced at its upper end, $a^1$, to allow the oil from pipe $B^1$ to pass around it, and the upper end of the case is formed with a conical seat, $a^3$, terminating with an outlet. The upper end of the valve stem has a pin, a, the straight part of which is the exact diameter necessary for the full size of the vapor outlet. This pin protrudes through the outlet in the case, and has a shoulder, $a^2$, which, when the valve is shut, bears against and tightly

fits with a ground joint against the conical surface of the seat, a³. This seat, a³, may have a single straight taper, as in Fig. 4, or it may have two different tapers at an angle, as in Fig. 5. In either case the pin, a, passes through the outlet in the case, guides the valve stem and the straight part, a, sizes and cleans the vapor outlet, while the shoulder, a², tightly closes, and shuts off the escape of vapor or oil by coming to a tight bearing against the conical seat, a³. * * * I am also aware of the various forms of stems and needles in use in other vapor generators, none of which, to my knowledge, perform the function of mine in maintaining a uniform size for the gas or vapor outlet against deposit of carbon, accumulation of dirt," etc.

The clauses of the specifications of the original patent relating to the valve plug and stem read as follows:

"This case (see Figs. 4 and 5) is screw-threaded interiorly at its lower end to receive a screw-threaded plug, C¹, which is turned by a handle, C², to advance or withdraw the stem in the case. The case, C, is enlarged, or the stem C¹ slightly reduced at its upper end, a¹, to allow the oil from pipe B¹ to pass around it, and the upper end of the case is formed with a conical seat, a³, terminating with an outlet. The upper end of the valve stem has a pin, a, which protrudes through the outlet in the case, and has a shoulder, a², which, when the valve is shut, bears against and tightly fits with a ground joint against the conical surface of the seat, a³. This seat, a³, may have a single straight taper, as in Fig. 4, or it may have two different tapers at an angle, as in Fig. 5. In either case the pin, a, passes through the outlet in the case, and guides the valve stem, and also regulates the size of the circular film of vapor, while the shoulder, a², tightly closes, and cuts off the escape of vapor by coming to a tight bearing against the conical seat, a³."

It will be seen that the function of cleansing the burner outlet orifice was not claimed for the valve-plug stem in the original patent, nor was it alluded to, suggested, or hinted at in the specifications or the drawings of the original patent, nor, as counsel well say, does it inhere in the valve stem, but must be realized through special construction, of which there is no suggestion or description in the original patent. There was no omission, however, to describe its other functions. They were fully described and set forth, especially those of the pin, needle, or protruding stem, which, it is stated, were to guide the valve stem, and regulate the size of the circular film of vapor. It seemed to the court during the early consideration of the case that this clause might, by fair construction, include cleansing the burner outlet orifice as part of the process of regulating the size of the circular film of vapor, and counsel were given an opportunity to be heard upon that question. But after further and more careful consideration it is clear that this clause has reference to fixing and maintaining a normal size of film, and does not contemplate or provide against obstructions which may arise in the course of use to impede its movement. The removal of dirt and deposits of carbon which obstruct the flow of the vapor is a distinct and independent operation having no necessary connection with the other. The cleansing function of the valve stem, therefore, is not found within the contemplation of the original patent. The functions attributed to pin, a, and described with so much particularity in the specifications, preclude any such interpretations of the original patent. During the nearly two years which elapsed before the reissue, the new function may have been developed by use or in the course of improvement, and the reissue sought

for the purpose of incorporating it with the original invention. The court finds that claims 1 and 2 of the reissue patent are void, because it does not appear that the original patent was inoperative or invalid by reason of their omission, and because, including these claims, it is not for the same invention covered by the original patent. The demurrer will be sustained.